FILED
Sep 23, 2021
02:02 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS





# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| **WILLIAM SIMS,** | ) | **Docket No 2020-05-0526** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 42697-2019** |
| **NISSAN NORTH AMERICA, INC.,** | ) | |
| **Employer,** | ) | **Judge Robert Durham** |
| **And** | ) | |
| **SAFETY NAT'L CAS. CORP.,** | ) | |
| **Insurer.** | ) | |

---

## EXPEDITED HEARING ORDER DENYING BENEFITS

---

The Court held an Expedited Hearing in this case on September 15, 2021. Mr. Sims seeks an order requiring Nissan to provide treatment for his low-back and right-hip pain, along with weakness in his right leg, that he asserts is due to his work-related injury of June 12, 2019. The Court holds that Mr. Sims is not likely to prove at trial that these complaints are due to his work injury and denies his requested relief.

### History of Claim

Although Mr. Sims's injury occurred in 2019, the medical history relevant to this claim began several years earlier.

In 2015, Mr. Sims began treating with Tennessee Valley Pain Consultants (TVPC), a pain management facility. According to the initial record, Mr. Sims explained that he had suffered from fibromyalgia for years and that it caused constant, burning pain that would "migrate" to his shoulders, upper arms, low back, thighs, and left knee. He also complained of anxiety, frequent itching in his left chest and a "crawling electrical sensation" along the outer thighs.

TVPC diagnosed Mr. Sims with several conditions associated with his various pain points and altered sensation complaints, including myalgia, lumbago, cervicalgia,

1

lumbar radiculopathy, and bilateral shoulder pain. He received opioids, anti-inflammatories, nerve pain medication, and other drugs to treat his symptoms. To address Mr. Sims's low-back pain and tingling in his thighs, TVPC ordered a lumbar MRI in 2016, but the MRI was negative for any abnormalities.

Since 2015, Mr. Sims has visited TVPC every few months to renew his prescriptions. He also receives thoracic or lumbar epidural steroid injections every three to four months, which he asserted alleviates the tingling sensations in his thighs. Little variation has occurred with Mr. Sims's symptoms or TVPC's treatment.

Despite his complaints, Mr. Sims continued working full-time for Nissan as a tool-and-die maker. On June 12, 2019, an overhead crane struck him in the left shoulder, forcing him to bend sideways over his machine and requiring him to twist around the crane to free himself. Mr. Sims testified that as he did so, he felt a "pop" in his back that caused immediate pain. However, it was only after he discovered that he was unable to lift his right foot that he became truly concerned and notified his supervisor that he needed help. The supervisor escorted Mr. Sims to the in-house medical clinic.

At the clinic, Mr. Sims complained of right-hip and right-shoulder pain, and he told the provider that his "right leg won't move." The provider immediately called an ambulance to take him to the emergency room. According to Mr. Sims, a nurse presented him with several blank documents for his signature as he was being strapped into a gurney and told him he needed to sign them to receive treatment.

One of the forms was a choice of physician form, which Mr. Sims testified was completely blank when he signed it. The form had the names of three doctors printed in the appropriate spaces, and the bottom portion where Dr. Mary Gerges, Nissan's in-house doctor, was selected as the authorized physician was handwritten with ink that was a different color from Mr. Sims's signature. Mr. Sims testified that this was not his handwriting. Nissan did not offer any evidence to rebut Mr. Sims's testimony about the choice of physician form.

After Mr. Sims signed the forms, he was transported to the emergency room. The ER notes state that he complained of feeling a "pop" in his low back and now suffers from severe low-back pain with tingling in his right thigh and difficulty in raising his right leg. Mr. Sims admitted to chronic low-back pain but stated the pain was "much worse" after the accident and that the weakness was new. A lumbar MRI revealed "significant facet degenerative change with bilateral neural foraminal stenosis" at L4-5 especially on the left with "evidence of edema and enlargement" of the exiting left L4 nerve root. After Mr. Sims's symptoms improved, the ER provider released him to return to light duty with significant restrictions.

Mr. Sims returned to work the next day and received further treatment with Dr.

2

Gerges.[1]  She diagnosed a work-related left-shoulder contusion.  She also believed the work incident exacerbated his chronic conditions, causing low-back and right-hip sprain/strain with right-leg weakness and paresthesia.  She kept him on light duty with significant restrictions.

On July 10, Dr. Gerges wrote that Mr. Sims reported his low-back pain had worsened that day with pain radiating into his right hip and testicle, but he had complete resolution of his left-shoulder pain and right-leg weakness.  Dr. Gerges maintained the work restrictions and ordered physical therapy.

Dr. Gerges saw Mr. Sims for the last time on August 7.  Mr. Sims reported a stabbing pain in his right-low back and a burning sensation on the outside of his right thigh.  Dr. Gerges noted he said that after an epidural steroid injection at TVPC, he had "significant improvement" in his symptoms over the weekend; however, the symptoms progressively worsened when he returned to work.  At this point, Dr. Gerges said that she did not believe Mr. Sims's low-back pain and paresthesia were "primarily work related" but were most likely due to an exacerbation of pre-existing lumbar arthritis.  She concluded that his current symptoms were beyond a sprain/strain injury, especially since "his MRI was negative for any acute findings that could have been caused by current injury."  Based on this report, Nissan denied any further treatment.

Mr. Sims continued to experience low-back/right-hip pain and right-leg weakness, so he sought treatment with orthopedist John Rodriguez Feo, III on June 16, 2020.  Dr. Feo recorded that Mr. Sims claimed his work accident caused right-leg weakness, which was not there before.  Mr. Sims also said he had increased pain and paresthesia radiating down his right leg all the way to his foot.  After examination and a review of x-rays and the 2019 MRI, Dr. Feo found the symptoms were consistent with a right-sided L5-S1 radiculopathy, likely secondary to "L5-S1 dynamic spondylolisthesis."

Dr. Feo ordered another MRI, which he felt was "relatively unremarkable" but did suggest L5-S1 spondylolisthesis that was consistent with neural foraminal stenosis and Mr. Sims's right leg symptoms.  He believed surgery would be appropriate, except for the fact that Mr. Sims was significantly overweight, which would complicate any operative procedure.  He recommended another epidural steroid injection and noted that Mr. Sims was seeing a doctor for possible bariatric surgery to reduce his weight.[2]  Dr. Feo did not mention causation for Mr. Sim's back condition in his records.

Mr. Sims continued to believe his symptoms were due to the accident, and he filed a Petition for Benefit Determination seeking treatment.  Nissan then sent Mr. Sims for an

---

[1] Mr. Sims has remained fully employed by Nissan and is not seeking temporary disability benefits.
[2] Mr. Sims has since undergone a gastric sleeve abdominal procedure and has lost a significant amount of weight.

independent medical evaluation with neurosurgeon Douglas Matthews.

According to Dr. Matthews's report, Mr. Sims complained of low-back and right-hip pain that radiated to his big toe and intensified with standing or walking; however, he denied any weakness. On exam, Mr. Sims exhibited limited lumbar range of motion. He had normal strength, as well as light touch sensations in all his extremities. A straight leg raise test revealed mild back discomfort, but Mr. Sims did have absent reflexes in both legs and walked with a mild limp.

Dr. Matthews concluded that Mr. Sims suffers from a degenerative lumbar spinal condition at L4/5 with facet degenerative changes that include joint swelling. These degenerative changes have created lumbar stenosis and varying degrees of radiculopathy. He believed that Mr. Sims's work injury caused a temporary exacerbation of his pre-existing medical conditions but did not cause an anatomic change. He stated there was "no evidence" that the injury caused a "permanent elevation in [Mr. Sims's] pain or permanent damage to his spine." Instead, the work injury caused a temporary exacerbation of a lumbar strain and lumbar radiculopathy that "rapidly returned to [Mr. Sims's] chronic state."

At the hearing, Mr. Sims took issue with the accuracy of Dr. Matthews's statements. While he admitted that he had a long history of pain, including low-back pain, he insisted that after the accident his symptoms were different and more severe in his low back and right hip. He also testified that he continues to suffer from right-leg weakness, which he never had before his accident.

### Findings of Fact and Conclusions of Law

Mr. Sims must present evidence from which this Court can determine that he is likely to prove at trial that the additional treatment he seeks is for complaints that are due to his work injury. *See McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015). Given the evidence, the Court holds that Mr. Sims did not meet his burden on this issue.

Tennessee Code Annotated section 50-6-204 governs an employer's obligation to provide medical treatment made "reasonably necessary" by a work injury. Nissan does not contest that Mr. Sims suffered a compensable injury on June 12, 2019, or that he initially required treatment for it. But it maintains that further treatment is no longer reasonably necessary, since Mr. Sims's current complaints are not due to his accident.

The issue of reasonable and necessary treatment is complicated by the fact that, while Nissan provided treatment immediately after the accident, the undisputed evidence shows that it did not comply with the law in providing Mr. Sims's medical care. Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) requires an employer to provide

4

a panel of three doctors from which the injured employee may choose a treating physician. Mr. Sims testified that the Choice of Physician Form he signed before going to the emergency room was blank. In addition, the portion selecting Dr. Gerges was written in a different hand and with different ink from Mr. Sims's signature. The Court finds Mr. Sims's testimony credible, and Nissan did not offer any contrary evidence. Thus, the Court holds that Mr. Sims is likely to prove that he was not given an opportunity to choose an authorized physician from a panel.

Nevertheless, this does not necessarily mean that Nissan is obligated to provide a panel at this stage. *See Berdnik v. Fairfield Glade Com'ty Club*, 2017 TN Wrk. Comp. App. Bd. LEXIS 32, at *10-11 (May 18, 2017). In *Berdnik*, the Appeals Board held that the first question that must be answered before ordering benefits is whether the evidence shows that the employee is likely to prove at trial that she is entitled to benefits. *Id*. at *11. Even though the employer failed to provide a panel, the only medical evidence presented at the hearing proved that the employee's condition was not causally related to employment. Thus, the Appeals Board held that the employee did not prove she was likely to prevail at trial and was not entitled to a panel. *Id*.

The same analysis applies here. Mr. Sims has the burden to show that he is likely to prove at trial that his right-lumbar, hip, and leg pain and weakness were caused by his work-related injury. To prove causation, Mr. Sims must show to a reasonable degree of medical certainty that his work injury contributed more than fifty percent in causing these symptoms, considering all causes. "Reasonable degree of medical certainty" means "it is more likely than not considering all causes, as opposed to speculation or uncertainty." *See* Tenn. Code Ann. § 50-6-102(14) (2020). Given that the standard requires "medical certainty," causation must be shown through an expert medical opinion. *Id*.

The only medical proof as to causation is that of Dr. Gerges and Dr. Matthews. Both gave the opinion that, while Mr. Sims's work-related injury caused a temporary exacerbation of his pre-existing medical conditions, his current complaints and possible need for surgery are primarily due to his degenerative disc disease and not the work injury. While the Court finds Mr. Sims credible as to how his symptoms differ now as opposed to before the injury, the Court holds that his testimony alone is not sufficient to establish entitlement to further medical treatment. Therefore, Mr. Sims's request for further medical treatment is denied at this time.

IT IS, THEREFORE, ORDERED as follows:

1. Mr. Sims's request for additional medical treatment is denied.

2. The Court refers this case to the Bureau's Compliance Program to investigate and determine if, and to what extent, it should issue a penalty for Nissan's apparent failure to comply with Tennessee Code Annotated section 50-6-

204(a)(3)(A)(i).

3. This case is set for a Scheduling Hearing on **November 8, 2021, at 9:00 a.m. Central Time**. The parties must call 615-253-0010 to participate. Failure to call might result in a determination of the issues without the party's participation.

**ENTERED on September 23, 2021.**

_____
**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**

**APPENDIX**

Technical Record:
1. Petition for Benefit Determination
2. Dispute Resolution Statement
3. Dispute Certification Notice
4. Request for Expedited Hearing
5. Notice of Expedited Hearing
6. Nissan's Pre-Hearing Brief
7. Nissan's Witness List
8. Nissan's Exhibit List

Exhibits:
1. Mr. Sims's Rule 72 Statement
2. Wage Statement
3. Nissan's Submission of Evidence (Collective Exhibit)
4. MRI Report
5. Choice of Physician Form
6. Emergency Room Report

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on September 23, 2021.

| Name | Certified Mail | Via Email | Email Address |
|------|----------------|-----------|---------------|
| **William Sims** | X | X | 991 Rowe Gap Road, Winchester, TN 37398 asims@madison.k12.al.us |
| **Stephen Morton** | | X | stephen@mgclaw.com amber.dennis@mgclaw.com |
| **Compliance Program** | | X | WCCompliance.Program@tn.gov |

_____

**PENNY SHRUM, Court Clerk**
WC.CourtClerk@tn.gov

7



<u>Expedited Hearing Order Right to Appeal</u>:

  If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*